### PAINT CREEK CO. et al. v. GALLEGO COAL & LAND CO. et al.

(Circuit Court of Appeals, Fourth Circuit. November 5, 1908.)

No. 742.

1. COURTS (§ 316*)—FEDERAL COURTS—JURISDICTION—CITIZENSHIP—PARTIES —RESIDENCE.

Where, in a suit to restrain defendants from selling liquor on certain land under a contract with a lumber company which held a timber contract from complainant's grantors, no relief was sought by or against the lumber company, it was not a necessary party, and hence it was not material that it was improperly joined as a defendant, and its joinder as a complainant would have defeated federal jurisdiction because of its citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 862; Dec. Dig. § 316.*]

2. LOGS AND LOGGING (§ 3*)—TIMBER CONTRACT—CONSTRUCTION—SALE OF LIQUORS.

Complainants' grantors, owning a large body of timber land, sold to a lumber company all the timber on the land, with certain exceptions. The contract provided that necessary rights of way over the land and the use of sufficient surface for mill sites, houses, etc., used in connection with the timber operations contemplated, in so far as they were owned by the grantors, were granted to the lumber company as incidents of the sale, to end when the other rights of the lumber company under the contract should cease. The lumber company thereafter granted L. the exclusive right to furnish all merchandise and supplies to the lumber company's employés and contractors in all of the operations thereof on the land, pursuant to which L. erected a storehouse and stable and opened a general store. Held, that the lumber company's contract was not a lease but a mere timber contract, and that the owners of the land were therefore entitled to maintain a suit in equity to restrain L. and his assignee from conducting a saloon and from selling liquors on the land.

[Ed. Note.—For other cases, see Logs and Logging, Dec. Dig. § 3.*]

Appeal from the Circuit Court of the United States for the Southern District of West Virginia, at Charleston.

This is an appeal from a decree of the United States Circuit Court for the Southern District of West Virginia, enjoining the appellants from using any part of a certain tract of land in the bill mentioned for the purpose of conducting thereon the whisky or saloon business, and from selling thereon intoxicating liquors. The case arose substantially as follows: In the year 1902, C. F. Ackermann and C. H. Voegele, trustees, citizens and residents of Ohio, owned in fee a certain large and valuable tract of land, underlaid with seams of coal, and on which stood considerable timber, containing from 26,000 to 30,000 acres, situated in the counties of Fayette, Raleigh, and Kanawha, in the Southern judicial district of West Virginia, known as the "Gallego Survey." During the year Ackermann and Voegele, trustees, entered into a certain contract in writing with the defendants, the J. W. Mahan Lumber Company, by which they sold to the Mahan Lumber Company all of the timber 16 inches and over in diameter inside the bark, and 2 feet from the ground,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

situated on that part of the tract of land aforesaid drained by the waters of Paint creek and its tributaries (except the walnut trees on said land theretofore sold), and estimated to contain 15,000 acres, more or less. The Mahan Lumber Company thereupon entered upon the tract, built sawmills and other buildings, and proceeded to manufacture lumber from the trees cut from said land, and so continued to the time of the filing of the bill herein, and employed in so doing large numbers of workmen. One of the provisions of said contract is as follows: "It is always understood that necessary rights of way over said land, and the use of sufficient surface for mill sites, houses, &c., used in connection with the timber operations herein contemplated in so far as they are owned by the parties of the first part, are granted to said second parties as incidents of said sale, and to end when the other rights of the second parties under this contract shall from any cause cease." After the lumber company had thus entered upon the premises, it entered into a contract in writing with the defendant G. C. Lewis, granting to him the sole and exclusive right to furnish all merchandise, supplies to employés and contractors of said J. W. Mahan Company, in all of the operations of the company on said tract; and in pursuance thereof, with the consent of Mahan & Co., Lewis erected a storehouse and stable, and opened therein a mercantile business, carrying dry goods, groceries, and notions, and such useful articles as are usually sold in a general store supplying laborers and contractors and employés of a lumber concern; which business said Lewis continued for some two years or more, when he assigned all of his rights under his contract with the Mahan Company, to a corporation known as the Paint Creek Supply Company, the appellant here, in which he was a large stockholder, and it is charged the same was formed as a means for selling liquors and intoxicating drinks upon the premises and land aforesaid, in contravention of the rights of the complainants.

Subsequent to the contract aforesaid with the Mahan Company, and by that company with Lewis, Ackermann and Voegele, trustees, conveyed in fee the said tract of land embraced within the Gallego survey to the Gallego Coal & Land Company, one of the complainants herein; and the latter company conveyed the rights arising under the timber contract with the J. A. Mahan Company to the Ohio Timber Company, the other complainant; and the rights of the complainants were duly vested before Lewis assigned his contract to the Paint Creek Supply Company, and before the formation of the latter company, as charged in the bill. After the acquisition of the rights by the complainant companies, the appellees herein, in and to the lands embraced within the Gallego survey, and the timber rights under the Mahan contract, the appellees entered into contracts with the Kanawha & Pocahontas Railroad Company, the Gallego Coal & Land Company, and Charles Pratt & Co., the owners and lessees of large tracts of land on both sides of Paint creek, for a large part of the distance up said creek, to the lands of those of the complainants, and the mills of said J. W. Mahan Company, and the last-named companies were engaged in the development of said property, the opening of coal mines, and extension of railroad lines in and through that section. The Gallego Coal & Land Company desired an extension of said railroad in order to develop the property of the Gallego survey, and especially to ship coal therefrom; and the Ohio Company, to facilitate shipments of lumber, contracted to pay the sum of $10,000 a mile for a distance of eight miles of said railroad in and through the property. The railroad was built five miles above Mahan's mill into complainants' lands, and one of the considerations and provisions of the contract for the construction of the road, in addition to the $10,000 per mile, was that the whisky business should not be allowed on said Gallego survey, and that the land should not be used for the sale of intoxicating liquors thereon. The complainants charge that after the making of this contract on their part, by which they undertook not to allow the sale of liquor upon their property, the Paint Creek Supply Company, the successor of G. C. Lewis, under his contract with the J. W. Mahan Company, undertook to open up the liquor business upon the land within the Gallego survey, claiming the right to do so by virtue of the original timber contract with the J. W. Mahan Company, and that thereupon the parties

with whom complainants had contracted as aforesaid against such use of their premises protested against such use thereof, and demanded of the complainants the enforcement of their covenants with them, averring that they and their tenants were greatly injured, and their business retarded, by the said whisky business being carried on by the Paint Creek Supply Company, and that especially the coal operation known as the Hickory Camp Coal Company had been greatly injured by such business; and the Ohio Timber Company charged that their interests under the J. W. Mahan Lumber Company contract would also be greatly injured by reason of the temptation to their laborers and employés, decreasing their efficiency, and that the sale of such intoxicants in the forest, which was far removed from police protection, would and did create disorder, lawlessness, disorganization, and idleness among the employés, and deprived complainants of substantial rights which belonged to them, and which they had not parted with by virtue of the contract with the Mahan Company or any other person. Complainants further charged that the Paint Creek Supply Company was without authority to conduct the whisky business, that the same was in no manner necessary to the business of the Mahan Company, and was neither granted to the latter company directly, or as incident to any grant made to them in the contract to cut timber. That the complainants were remediless save in a court of equity, and that they could only secure, under the circumstances detailed in the bill, adequate remedy for all of the interests involved, by the injunction prayed for.

After full hearing upon the bill, exhibits, and affidavit, the demurrer of the J. W. Mahan Lumber Company, and the joint demurrer, plea, and answer of the Paint Creek Supply Company, and G. C. Lewis, the lower court granted the injunction prayed for, from which decree this appeal is taken.

James M. Payne, Payne & Payne, and Dillon & Nuckolls, for appellants. W. E. Chilton, R. Brinkerhoff, T. S. Clark, T. R. English, and Chilton, McCorkle & Chilton, for appellees.

Before PRITCHARD, Circuit Judge, and WADDILL and BOYD, District Judges.

WADDILL, District Judge (after stating the facts as above). The appellants, G. C. Lewis and the Paint Creek Supply Company, by demurrer and plea raise the question of the jurisdiction of the court, in that they charge the suit was a collusive one between the appellees, the complainants, and the defendant the J. W. Mahan Lumber Company, and that the interests of the latter company are identical with those of appellees, and said company should have been joined with the appellees, the complainants, instead of the appellants, the defendants, and, if so joined, would defeat the jurisdiction of the federal court, said company being a citizen of the state of West Virginia, and therefore not a citizen of the same state as the appellees, the other complainants. Upon considering this question, and the demurrer of the J. W. Mahan Lumber Company to the bill, the lower court sustained the last-named demurrer, and dismissed the bill as to the said lumber company, which is assigned as error by the appellants. In pressing this assignment of error, sight is apparently lost of the difference between persons who may be proper, and those it is necessary to make, parties. A careful consideration of the pleadings would seem to make it clear at least that the J. W. Mahan Lumber Company is not a necessary party, in order to adjudicate the actual merits of this controversy. It is seeking no relief at the hands of the court, either as plaintiff or defendant, and the appellees, the complainants, asked no relief against them, and their pres-

ence could hence clearly be dispensed with without prejudice to the rights of any one.

As to the suggestion that the suit is a collusive one between the Mahan Company, and appellees, the complainants, it suffices to say that there is nothing in the record to sustain that contention, and the appellants have not sought to establish the same.

Eliminating the technical questions arising upon the record, and in which there seem to be no merit, the case turns upon the true interpretation and meaning to be given to the timber contract with the J. W. Mahan Lumber Company, and under which it was operating upon the appellees' premises. The appellants, the Paint Creek Supply Company and G. C. Lewis, can have as against the appellees no other or greater rights than the J. W. Mahan Lumber Company acquired under their contract with the then owners of the property. Hence, it will be unnecessary to deal especially with the undertakings either between the lumber company and Lewis, or between Lewis and the Paint Creek Supply Company. In the language of the contract with the Mahan Lumber Co., hereinbefore recited, it is clear that no lease of the property, or transfer or sale of property, or of any interest therein, other than the right to cut timber, and the privileges incident to the exercise of such right, was contemplated. It was, in other words, a simple timber contract, whereby it was agreed to sell all of the timber, except the walnut, of certain dimensions on a certain portion of an area of land, at a fixed remuneration. The fact that provision was made for the necessary rights of way over the land, and the use of sufficient surface for mill sites, houses, etc., used in connection with the timber operations, when considered in the light of what the parties had in mind and were contracting about one with the other, gives no countenance to the contentions here made that the owners of the property were parting with any inherent right which they possessed to control, govern, and dispose of what belonged to them, to wit, the exclusive right to part with the fee of the entire property, or contract with any person in and about any lawful undertaking which they felt would be a benefit to the same. It was manifestly not within the mind of either party that, in the exercise of this grant incident to the cutting of the timber, the lumber company would or could do anything, not reasonably necessary to the operation of its business, calculated to injuriously affect either the portion of the property upon which they were operating, or the residue of the tract; and what it is alleged the appellants are doing here would not only seriously affect both interests, but involve the appellees in great loss by reason of other lawful contracts they have seen fit to make in connection with the development of their own property. The suggestion was made in argument that appellees had no right to place any limitation upon the use that the lumber company or its assignees made of the houses erected by them upon the premises in connection with their lumber business, or to limit them in what should be sold to their employés on such premises. The answer to this is that the most liberal construction of the contract is that such houses should be used as were necessary, and that only such business, if any, should be carried on, as was proper and reasonable for the lumber company's business. The contract between the Mahan Company and G. C. Lewis, under

166 F.—5

which Lewis conducted the general merchandise store and commissary for the use of the lumber company for two years, and until the establishment of the barroom complained of, was that he was to have the sole and exclusive right to furnish all merchandise and supplies to employés and contractors of said lumber company, and the company was to furnish such sites for stores at convenient places as should be designated by said Lewis, in order that he might properly, and in the most convenient way, furnish goods, supplies, and merchandise to said employés and contractors. This contract, it is true, is not binding upon the appellees, the complainants, but under the interpretation placed upon it by the parties themselves, as well as that of the contract under which the Mahan Company claimed, the right now contended for was not asserted, and appellant Lewis contented himself with conducting a commissary or general store; and during that period, at least, the sale of whisky was not thought necessary in the operation of the lumber plant. It will be borne in mind that the lumber company is not making this contention now, and certainly as between the owners of this property and the appellants, who doubtless desire for obvious reasons to have the exclusive right to vend intoxicating liquors in this large and rapidly developing territory, this pretext of necessity on account of any interest that the lumber company may have, should not for a moment be entertained, however much it might benefit the appellants. At least some proof should have been offered of the necessity, if it was proposed to claim the benefit of such a right through the Mahan Company's contract which they themselves did not assert, and the complainants, the appellees, especially contested. We have here large property owners, engaged in the development of a great section, prolific with resources of vast value, who are demanding that whisky shall not be sold, because destructive of their interests and of the business in which they are engaged, and the usefulness of those whom they employ, on the one hand, and those seeking to secure an exclusive right to engage in such business, on the other; because, forsooth, it may be necessary, in furtherance of a business under a contract under which they claim. To sustain this position, full proof of the necessity should be required, which is utterly lacking.

The question of whether or not the conduct of the liquor business, under the circumstances, is a nuisance, has been discussed at some length; but we do not feel called upon to enter into the same, for the reason that there is no lease here, in the view we take of this case, but merely a right to cut timber, with the privileges incident thereto, which, as against the owners of the property, neither guarantees to the party acquiring the timber, or persons claiming by, through or under him, as against the owners of the property, any such privilege as the one contended for.

For these reasons, the decree of the lower court, which is plainly right, is affirmed, and the supersedeas awarded vacated.

Affirmed.